IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| ADAM THOMAS GRAY | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 12-C-1743 |
| v. | ) | |
| | ) | Honorable Amy J. St. Eve |
| KEVWE AKPORE, Warden, | ) | |
| | ) | |
| Respondent | ) | |

**REPLY IN SUPPORT OF PETITIONER'S
MOTION TO LIFT STAY AND HOLD AN EVIDENTIARY HEARING**

Adam Gray's petition for writ of habeas corpus identifies new evidence that establishes that he has been wrongfully imprisoned for over twenty years – since he was fourteen years old – for an alleged arson that he did not commit and that the scientific evidence now shows very likely did not occur. Mr. Gray's pending motion asks this Court to hold an expedited evidentiary hearing on the grounds that that he is actually innocent and thus is entitled to pursue habeas relief on both his exhausted and unexhausted constitutional claims. (Dkt. 40); *Milone v. Camp*, 22 F.3d 693, 700 (7th Cir. 1994) ("This Court may consider [Petitioner's] claim of actual innocence only in determining whether to excuse his failure to exhaust all state remedies before pursuing this habeas petition"). Respondent has submitted a response to the motion. (Dkt. 45.) Mr. Gray now submits this reply.

**I.     Adam Gray Has Pled Facts Establishing His Actual Innocence.**

Adam Gray has set forth facts establishing that if he were re-tried today, no reasonable juror would convict him. (Dkt. 47 at 42-55.) The Cook County State's Attorney has conceded

1

that those facts entitle him to an evidentiary hearing on his actual innocence claim under Illinois law. (Dkt. 40 at 2.)

Respondent, however, does not take a position on the critical question of whether Mr. Gray has met the "fundamental miscarriage of justice" standard articulated by the United States Supreme Court – that is, whether Mr. Gray has pled facts showing that no reasonable juror hearing the entirety of the evidence today would vote to convict him. *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933 (2013). Rather than address the facts alleged in Mr. Gray's pleadings, Respondent repeatedly argues that Mr. Gray has "not yet proven" his actual innocence claim.[1] (Dkt. 45 at 2, 6, 7.)

That is not a response. Mr. Gray has not had the opportunity to prove his actual innocence claim because he has not yet been granted a hearing at which he could present the evidence of his innocence to a court. That is obviously the point of this motion.

To assist the Court in deciding this issue, Mr. Gray will first briefly summarize the facts that establish his innocence. Mr. Gray will then address Respondent's arguments regarding the effect in this Court of the State's Attorney's agreement that he is entitled to an evidentiary hearing under the Illinois Post-Conviction Hearing Act.

---

[1] Respondent states that he "has neither answered nor otherwise responded to petitioner's habeas petition, much less been ordered to do so." (Dkt. 45 at 12.) It is difficult to understand why Respondent chose not to respond to the innocence claim in his response to this motion. Respondent points out that Mr. Gray's motion for leave to amend his petition was pending, (*id.*), but, as Mr. Gray stated, the Amended Petition is based on the same set of operative facts and raises the same claims as his initial petition. (Dkt. 39 at 2.) In addition, while Respondent argues that the Seventh Circuit's opinion in *Milone v. Camp* was "mistaken," (*see* pages 9-12 below), it is clear that if that case applies a petitioner who sets forth a claim of actual innocence can proceed on his unexhausted claims. Thus, Respondent knew that it very likely would be necessary for this Court to reach the question of whether Mr. Gray has pled facts showing his actual innocence to decide the present motion. In light of that, Mr. Gray respectfully requests that this Court decide whether he has stated a claim for actual innocence without giving Respondent a second opportunity to address the issue.

### A. Mr. Gray Is Entitled To Invoke The Fundamental Miscarriage of Justice Exception.

Mr. Gray's habeas petition details the facts showing he is innocent of the arson and felony murders of which he was convicted. (Dkt. 47.) Here is a summary of that evidence:

1. Leading fire investigators have determined that there is no basis in the physical evidence to conclude that the fire in this case was caused by arson. (Dkt. 47 at 46.) The theories espoused by the fire investigators at trial are now known to be textbook errors, and any competent fire investigator today would conclude that the cause of the fire cannot be determined. (*Id.* at 45-46 & Ex. 2 Hurst Aff. at 5-12, Ex. 18 Smith Aff. at 1-2.)

2. Although Adam "confessed" to starting the fire, that statement was elicited when he was one month past his fourteenth birthday, had no prior convictions, had never before been in serious trouble, and was made after detectives interrogated him for approximately six hours while preventing his mother and brother from seeing him. (*Id.* at 8-12, 20-21, 48-49.) A statement in those circumstances would be suppressed as coerced today. (*Id.* at 48-49, 70-71.)

3. When Adam "confessed," he said he started the fire using gasoline that he purchased in a milk jug from a Clark gas station. (*Id.* at 12, 49.) He said that after he started the fire, he ran down the alley behind the house and threw the milk jug there. (*Id.*) A police detective testified that he recovered a milk jug containing a substance that had a "strong odor of gasoline" from the alley half a block north of the burned house. (*Id.* at 12-13.) State prosecutors also argued in closing that the milk jug carried gasoline. (*Id.* at 26, 28-29, 62-65.) We now know, however, that the substance in the milk jug – called a heavy petroleum distillate, or HPD – was not gasoline. (*Id.* at 31, 39.) Furthermore, the Clark gas station attendant who identified Adam at trial has recanted and said that she was pressured into making an identification by the same detective who led the interrogation of Adam. (*Id.* at 13, 39-40.) Her recantation is corroborated by the fact that the Clark gas station did not sell any type of HPD, and police did not take any receipts or surveillance video showing that someone purchased less than a gallon of gasoline at around 2:30 AM. (*Id.* at 47, 59.)

4. Chemistry testing on the day of the fire showed that an HPD was also present in debris from the rear porch stairs of the building. (*Id.* at 15.) We now know, however, that the HPD found in the debris was likely present because HPDs are used in wood preservatives and can remain detectable in wood for years. (*Id.* at 45.)

5. We also now know that the HPD in the milk jug does not match the HPD in the debris. (*Id.* at 32, 33.) Thus, the milk jug – which seemed like critical corroborative evidence at trial – had absolutely nothing to do with the fire.

3

6. Teenager Kasey Paris was the State's primary motive witness at trial, where she testified that Adam Gray had threatened her repeatedly because he was jealous that she was "dating" their mutual friend Mel Gonzalez. (*Id.* at 40.) Paris now attests that she was "never intimidated or afraid of Adam." (*Id.* at 41.) She says she initially told police on the scene that she thought Adam started the fire because she was mad at him because Mel had broken up with her to hang out with him. (*Id.*)

7. One remaining eyewitness, Karrie Kelly, maintains that she saw Adam Gray running down the alley behind Albany Avenue at around 2:45 AM on the morning of the fire. (*Id.* at 6-7, 41-42.) Kelly's account is implausible for a multitude of reasons, including that she knew Adam from the neighborhood but did not identify him until viewing a four-person line-up, after having been around an angry crowd of people who were alleging that Adam had started the fire. (*Id.* at 50-55.)

8. Moreover, although Kelly testified that she saw a person running north up the alley behind the house and the milk jug was lying in plain sight approximately fifteen yards up that alley, (*see* People's Exhibit 13 (photo of the alley)), police did not find the jug until after they had elicited Adam's statement. (Dkt. 47 at 12-13.) A detective who had participated in the interrogation, (*id.* at 8-13), testified that he found the milk jug, which was yellowed, flattened, and covered in settled dust. (People's Exhibit 26 (photo of the milk jug).)

9. Adam slept over at his friend Mel Gonzalez's house on the night the fire occurred. (*Id.* at 7.) He, Mel, and Mel's young brother all slept in the living room. (*Id.* at 7.) Mel, his sister Rosemary, and his mother Lita all testified that they had not heard anyone get up or leave the house that night. (*Id.* at 7-8.)

Given these facts, where the scientific evidence contradicts the State's arson theory, where multiple witnesses testified that Adam was asleep at the time of the incident, and where the only conceivable remaining evidence against Mr. Gray is his coerced statement as a fourteen-year-old and a dubious eyewitness identification, no reasonable juror would convict on re-trial. *See House v. Bell*, 547 U.S. 518, 554 (2006) (holding that a petitioner had proven his actual innocence).

Courts around the country have recognized that mistakes made by untrained fire investigators have been responsible for numerous wrongful convictions. One federal judge has observed that "[b]y 2006… a number of articles in legal journals and cases cast a critical eye on the scientific reliability of arson evidence, methodologies, and techniques… men and women

4

ha[ve] been convicted, sentenced, perhaps even executed, on the basis of flawed arson evidence." *United States v. Hebshie*, 754 F. Supp. 2d 89, 92 (D. Mass. 2010); *see also Richey v. Bradshaw*, 498 F.3d 344 (6th Cir. 2006) (overturning an arson conviction); *Dugas v. Coplan*, 428 F.3d 317 (1st Cir. 2005) (same); *Souliotes v. Hedgpeth*, No. 06-CV-00667, 2012 WL 2684972 (E.D. Cal. July 6, 2012) (same).

*Souliotes v. Hedgpeth* is a case that should guide the Court here. The court in *Souliotes* addressed claims of actual innocence and ineffective assistance of counsel raised by a petitioner who was convicted of an arson and three homicides in 1997. 2012 WL 2684972, at *3-4. The prosecution's case at trial was based on a fire investigator's opinion that the fire was an arson started by a liquid accelerant, chemistry findings that appeared to show medium petroleum distillate ("MPD") both in carpet samples from the fire scene and on the defendant's shoes, and an eyewitness who testified that she saw the defendant at the scene of the fire just before it started. *Souliotes v. Hedgpeth*, 2012 WL 1458087, at *2-4 (E.D. Cal. Apr. 26, 2012) (Report and Recommendation of Seng, M.J.). In 2006, the petitioner filed a federal habeas petition presenting evidence that the fire investigator's opinion was based on discredited beliefs that certain "pour patterns" and "deep charring" meant that the fire was started with an ignitable liquid. *Id.* at *18. The petitioner also presented evidence that the MPD found on his shoes was chemically distinguishable from that found in the carpet samples.[2] *Id.* at *23. On the basis of that evidence, the court closely examined the single eyewitness's testimony and determined that it was not credible and that the petitioner had established his actual innocence.

---

[2] The State of California agreed with the petitioner's expert, John Lentini, that the MPDs in that case did not match. *Id.* at *3. Mr. Lentini, a former Chair of the American Society of Testing and Materials Committee for Forensic Sciences, is one of the chemists who has submitted an affidavit attesting that the HPDs found in this case do not match. (Dkt. 47, Ex. 1, Lentini Aff. at 1, 3.)

5

The court observed that "the fire science evidence presented at trial, including the MPD evidence placing Petitioner at the scene, was extremely strong evidence implicating Petitioner's guilt because reasonable and conscientious jurors may well have found Petitioner guilty in light of that evidence alone. Because the fire science evidence presented at trial has been discredited, the Magistrate Judge was correct to scrutinize the remaining evidence, with careful attention paid to [the single eyewitness's] testimony – the only remaining evidence that directly linked Petitioner to the scene of the fire." *Souliotes*, 2012 WL 2684972, at *4.

This Court should follow *Souliotes* and hold that Adam Gray has pled facts that establish his actual innocence.

### B. The State's Attorney Has Agreed That Mr. Gray Has Stated An Actual Innocence Claim Under The Same Standard As Applies Here.

Rather than address the facts in Mr. Gray's petition, Respondent spends six pages discussing the effect of the Cook County State's Attorney's agreement that Mr. Gray is entitled to an evidentiary hearing on his actual innocence claim in Illinois state court. (Dkt. 45 at 2-7.)

Respondent first argues that he should not be estopped by the position taken by the State's Attorney on Mr. Gray's actual innocence claim. (Dkt. 45 at 2.) Mr. Gray submits that there is no point in addressing that question at this time because Respondent has not yet taken a position that could be inconsistent with the State's Attorney's position.

Respondent next argues that the State's Attorney's agreement that Mr. Gray is entitled to a hearing on his actual innocence claim under Illinois law does not equate to a concession that Mr. Gray's pleadings meet the fundamental miscarriage of justice standard under Supreme Court precedent. (Dkt. 45 at 2-7.) Respondent misunderstands Illinois law on this point.

As stated in Mr. Gray's motion, the standard to establish actual innocence under the Illinois Constitution is the same as the standard to establish an actual innocence gateway claim

6

under the United States Constitution. (Dkt. 40 at 2); *compare People v. Edwards*, 2012 IL 111711, ¶32 ("the evidence in support of the claim must be newly discovered; material and not merely cumulative; and of such conclusive character that it would probably change the result on retrial") (internal quotation and citations omitted), *with McQuiggin*, 133 S.Ct. at 1933 (a petitioner demonstrates his actual innocence where "new evidence shows it is more likely than not that no reasonable juror would have convicted the petitioner"), *quoting Schlup v. Delo*, 513 U.S. 298, 329 (1995). The Illinois Supreme Court, in fact, has relied on *Schlup* in articulating its actual innocence standard. *Edwards*, 2012 IL 111711, at ¶33.

Respondent argues that the State's Attorney's agreement that Mr. Gray is entitled to an evidentiary hearing under the Illinois Post-Conviction Hearing Act ("the Act") does not amount to a concession that he has stated an actual innocence gateway claim under federal law because a petitioner can obtain a hearing under the Act upon only a "substantial showing" of a violation of a constitutional right. (Dkt. 45. at 4, *citing People v. Lofton*, 2011 IL App (1st) 100118.) While Respondent's position would be welcome news to many Illinois post-conviction petitioners, it would make little sense to hold hearings where petitioners cannot actually state claims upon which relief may be granted. That is not the law in Illinois.

Respondent's interpretation of the "substantial showing" requirement confuses the evidentiary showing required to warrant a hearing with a petitioner's burden of proof. Post-conviction proceedings are obviously collateral proceedings that take place after direct appeal has been exhausted. The Act therefore requires petitions to have attached "affidavits, records, or other evidence supporting its allegations." 725 ILCS 5/122-2. That is an essential requirement. *People v. Harris*, 224 Ill. 2d 115, 126 (2007) ("Failure to comply with section 122-2 is fatal and by itself justifies the petition's summary dismissal").

The Illinois Supreme Court cases from which the "substantial showing" language arise make clear that they are referring to the section 122-2 evidentiary requirement. *People v. Curtis*, 48 Ill. 2d 25, 27 (1971) ("Before a hearing is required a petitioner must make a substantial showing of a violation of constitutional rights and *to accomplish this the allegations in the petition must be supported by the record in the case or by accompanying affidavits*") (emphasis added and internal quotation omitted); *People v. Gaines*, 105 Ill. 2d 79, 91-92 (1984) (same); *People v. Coleman*, 183 Ill. 2d 366, 381 (1998) (same); *People v. Harper*, 2013 IL App (1st) 102181, ¶49-52 (ordering a third-stage evidentiary hearing on a claim of actual innocence where new affidavits, "if believed by the fact finder in the event of a retrial, would likely change the outcome of the case").[3]

Respondent cites no case where a court granted a post-conviction petitioner an evidentiary hearing on allegations that amounted to less than a constitutional violation. Rather, in an effort to define what a "substantial showing" might be as a burden of proof standard, Respondent relies on two cases for the proposition that a "substantial showing falls somewhere between mere denials on the one hand and proof by a preponderance of the evidence on the other." (Dkt. 45 at 4, *citing People v. Pearson*, 271 Ill. App. 3d 640 (1st Dist. 1995); *People v. Lucente*, 506 N.E.2d 1269, 1277 (Ill. 1987).) Those cases, however, addressed whether a criminal defendant was entitled to an evidentiary hearing under *Franks v. Delaware*, 438 U.S.

---

[3] Indeed, even at the first stage of post-conviction proceedings where only the "gist" of a constitutional claim need be stated, the Supreme Court has held that a petition may be dismissed if it presents "an indisputably meritless legal theory" such as one "completely contradicted by the record." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). Moreover, where a petition advances to the second stage, counsel is appointed to an indigent defendant. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009); 725 ILCS 5/122-4. It would make little sense to permit a hearing where even a petitioner represented by counsel could not state a claim upon which relief could be granted.

154 (1978), on a motion to quash a search warrant on the grounds that it was based on false information. They are totally irrelevant to the law on post-conviction proceedings.

In sum, a post-conviction petitioner in Illinois is entitled to a hearing only if he is able to state claims upon which relief can be granted. Adam Gray has pled facts that show his actual innocence, as the Cook County State's Attorney has agreed. This Court should reach the same conclusion.[4]

**II. The Seventh Circuit Has Extended The Fundamental Miscarriage Of Justice Exception To Exempt Actually Innocent Petitioners From The Total Exhaustion Requirement.**

Respondent dismisses as "mistaken," and "dicta," the Seventh Circuit's opinion in *Milone v. Camp*, 22 F.3d 693 (7th Cir. 1994), which squarely held that a petitioner who presents persuasive evidence of his actual innocence is entitled to habeas relief even on unexhausted claims.

This is what *Milone* said:

- "One of the circumstances upon which the total exhaustion requirement may be relaxed appears to be a 'colorable claim' by the petitioner that he is actually innocent of the crime for which he was convicted." *Id.* at 699.

---

[4] Respondent also argues in a footnote that "petitioner has not adequately explained why he waited until 2010 to seek the FOIA request that uncovered the data underlying his actual-innocence claim." (Dkt. 45 at 9 n. 3.) As an initial matter, and as Respondent should know, Petitioner did submit a FOIA request to the Chicago Police Department in 2008 that should have returned the chromatograms, but was told they no longer existed. (Dkt. 17 at 8-9 & Ex. 7.) More fundamentally, Respondent ignores the affidavit from Adam's prior post-conviction counsel, Marc Kadish, Director of Pro Bono Activities and Litigation Training at Mayer Brown, LLP, explaining that he believed the record showed that gasoline was present. (Dkt. 20 Ex. 1.) Mr. Kadish's belief was doubtlessly caused by the prosecutors' attempts to mislead the jury to believe that gasoline had been found and Adam's counsel's failure to understand that it had not. The fact that no gasoline was present anywhere was buried so deeply by Adam's prosecution that Clark Refining & Marketing, Inc., even settled a civil suit predicated on the allegation – which it stipulated to be true – that it had sold gasoline to Adam in a milk jug. (Dkt. 17 at 6 & Exs. 4, 5.)

- "This Court may consider Milone's claim of actual innocence only in determining whether to excuse his failure to exhaust all state remedies before pursuing this habeas petition." *Id.* at 700.

- "…the remainder of this opinion is premised on the assumption that Milone has made a sufficient showing of actual innocence to warrant habeas review of all of his constitutional claims, unexhausted as well as exhausted." *Id.* at 701.

The Court's decision that it could consider – via an evidentiary hearing as the district court in *Milone* held, *id.* at 698 – unexhausted claims based on the petitioner's persuasive showing of innocence thus was indisputably deliberate. Moreover, that decision was a necessary analytical step to the Court's ultimate conclusion that, while it was "sympathetic to Milone's position" because he had "made a credible claim that newly-discovered evidence… would exonerate him," his trial was not infected with constitutional error. *Id.* at 705. The Court's decision that it could hear the petitioner's unexhausted claims was thus part of the Court's holding. *Tate v. Showboat Marina Casino P'ship*, 431 F.3d 580, 582 (7th Cir. 2005) ("the holding of a case includes, besides the facts and the outcome, the reasoning essential to that outcome").[5] Respondent's dismissive assertion that *Milone* made no holding on point is incorrect.

---

[5] To further underscore the deliberate nature of the Court's decision, it is worth noting that Petitioner Milone directly raised the issue in both the district court and on appeal. *Id.* at 700 ("[Petitioner] wishes the Court to excuse his failure to exhaust all of his state remedies on the ground that it would constitute a miscarriage of justice, due to his innocence of the murder, not to entertain his petition"). The Seventh Circuit squarely considered the issue. *Id.* at 699 ("This opinion will first address the effect of a claim of actual innocence on habeas corpus review of state proceedings…"). The Court, in fact, carefully reviewed the Supreme Court's decisions on actual innocence and reserved the question of what showing a petitioner professing his innocence must make in order to have his unexhausted claims be heard.[5] *Id.* at 701; *Brumley v. Godinez*, No. 93-CV-4817, 1994 WL 411381, at *7 n. 3 (N.D. Ill. Aug. 3, 1994). These are all hallmarks of a binding determination. *United States v. Bloom*, 149 F.3d 649, 653 (7th Cir. 1998) (rejecting an argument that a passage was dictum because it "explains the Court's rationale and thus is part of the holding," and further stating that "[e]ven if the passage could be called dictum, it is not an aside unrelated to the subject of the case. The question had been briefed by the parties, so the statement was informed rather than casual; it is a considered expression by the Court supported

Respondent also brashly asserts that the Seventh Circuit "erroneously" interpreted the four Supreme Court cases addressing the fundamental miscarriage of justice exception it relied on in reaching its decision. A more plausible interpretation – and the one this Court is obligated to adopt – is that the Seventh Circuit understood those cases and meant what it said. Respondent's bluster on this point is particularly unreasonable in that he cites nothing to support his assertion and does not attempt to address the logic implicit in *Milone*'s concluding citation to *Murray v. Carrier*, 477 U.S. 478, 496 (1986). *Murray* held that a federal habeas court may hear claims that were procedurally defaulted in state court if necessary to correct a fundamental miscarriage of justice. *Id.* It makes sense to infer – as the Seventh Circuit manifestly did – that if a court may hear claims that were not presented in state post-conviction procedures, then it may hear claims that *have not been* presented in state post-conviction procedures.

Significantly, in *House v. Bell*, 547 U.S. 518, 536 (2006), the Supreme Court reaffirmed its holding in *Murray* following the enactment of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). The Supreme Court's recent holding in *McQuiggin* that a persuasive showing of actual innocence can overcome AEDPA's statutory bars further demonstrates that there is no reason to believe that *Milone* should be overturned. *See McQuiggin*, 133 S.Ct. at 1934 ("we will not construe a statute to displace courts' traditional equitable authority absent the clearest command"), *quoting Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010).

Finally, Respondent argues that given the enactment of AEDPA, following *Milone*'s holding would now have the consequence that deference under 28 U.S.C. § 2254(d) could not be applied. (Dkt. 45 at 8.) That is not a novel result. In fact, it is precisely how the Seventh Circuit

---

by earlier cases … and is not incompatible with any decision before or since"), *abrogated on other grounds by Skilling v. United States*, 130 S.Ct. 2896, 2932-33 (2010).

has held that claims that were procedurally defaulted in state court but saved for habeas review by a convincing showing of innocence should be treated. With respect to those claims, the Court has stated that "when no state court has squarely addressed the merits of a habeas claim, [] we review the claim under the pre-AEDPA standard of 28 U.S.C. § 2243, under which we 'dispose of the matter as law and justice require.'" *Morales v. Johnson* 659 F.3d 588, 599 (7th Cir. 2011) (internal quotations omitted), *citing Kerr v. Thurmer*, 639 F.3d 315, 326 (7th Cir. 2011); *Coleman v. Hardy*, No. 99-C-2635, 2012 WL 1192200, at *7 (N.D. Ill. Apr. 10, 2012).

*Milone* controls this case and demonstrates that the Seventh Circuit has held that habeas courts should extend the fundamental miscarriage of justice exception to hear unexhausted claims where it is necessary to end the wrongful incarceration of an innocent person, who was convicted in violation of the Constitution.

### III. The Equities Clearly Weigh In Favor Of Granting Mr. Gray An Expedited Evidentiary Hearing.

Respondent concludes by making several arguments related to the practicality and equities of holding a hearing on Mr. Gray's federal constitutional claims. (Dkt. 45 at 12-13.)

To be clear, Mr. Gray is willing to present his claims in either this Court or the Circuit Court of Cook County, or both, and is ready to do so. The reality of the situation is simply that federal courts have the resources to hear cases more quickly than Illinois state courts.

With respect to the seventeen months Mr. Gray's post-conviction petition has been pending in state court, Mr. Gray submits that this Court absolutely should consider the imperative to address his claims quickly in deciding this motion. *See Souliotes*, 2013 WL 1098255, at *2 (stating that the Court of Appeals had ordered the district court to "determine Petitioner's claims in an expedited manner due to Petitioner's advanced age and strong showing of innocence"). Respondent states blithely that Mr. Gray's petition has been "pending only since

12

March 2012." (Dkt. 45 at 9 n. 3). Respondent, however, is not the one who has been in prison. *See Lowe v. Duckworth*, 663 F.2d 42, 43 (1981) ("A seventeen-month delay is inordinate.").[6]

Ordering an expedited evidentiary hearing on Mr. Gray's unexhausted claims would not overburden this court or establish precedent that would overburden the federal courts. As Respondent notes, the Supreme Court has stated that the miscarriage of justice exception applies to a "severely confined category: cases in which new evidence shows it is more likely than not hat no reasonable juror would have convicted the petitioner." *McQuiggin*, 133 S.Ct. at 1933; (Dkt. 45 at 4). In an influential article arguing that habeas corpus proceedings should be reoriented to focus on claims of innocence, Judge Friendly stated, "a requirement that, with certain exceptions, an applicant for habeas corpus must make a colorable showing of innocence would enable courts of first instance to screen out rather rapidly a great multitude of applications not deserving their attention and devote their time to those few where injustice may have been done." Friendly, "Is Innocence Irrelevant? Collateral Attack on Criminal Judgments," 38 U. Chi. L. Rev. 142, 150 (1970).

Moreover, Mr. Gray's claims have merit that is evident on their face and could be quickly decided. *See Dozie v. Cady*, 430 F.2d 637, 637 (7th Cir. 1970) (ordering an evidentiary hearing on a habeas petition where the district court could hear claims more quickly than the state court and "Petitioner's allegations of error in his trial present a strong case for review"). Mr. Gray anticipates that the scientific evidence in this case will not be disputed. The State's own expert from trial acknowledges that no gasoline was present in the samples. (Dkt. 47, Ex. 5 Shambee

---

[6] Respondent also represents that an evidentiary hearing "is expected to begin, imminently, in state court." (Dkt. 45 at 13.) That statement is baseless. (Expected by whom?) Mr. Gray's counsel have not been party to any discussions regarding scheduling a hearing in state court. In counsel's experience litigating post-conviction cases in the Circuit Court of Cook County, a typical wait for a hearing after a decision on a motion to dismiss is approximately nine months, and can be substantially longer in busy courts.

Aff. at ¶5.) The type of chemical analysis that Mr. Gray's experts have performed that establishes that the HPDs do not match was stipulated by the State of California to be reliable and accurate in another case. *Souliotes*, 2012 WL 1458087, at *3. And as discussed above, the testimony at trial that the burn patterns from the fire indicated that it was started by an accelerant is now widely acknowledged to be mistaken. (*See* Dkt. 47, Ex. 18 Smith Aff. at 9-10 (explaining that the notion of "alligator char" advanced at trial and many other misconceptions "have been almost completely removed from the fire investigation lexicon today").)

The now-indisputable fact that no gasoline was present alone largely proves two of Mr. Gray's constitutional claims. Mr. Gray's claim of ineffective assistance is based on the fact that his attorneys did not understand that no gasoline was present in this case about whether he started a fire using gasoline. That was clearly a mistake, and it clearly prejudiced Mr. Gray. (*See* Dkt. 47, Ex. 19 Hurst Dep. at 157 ("I hate to bring this up, but I've got to. That is probably the worst defense I have seen. That is the worst cross-examination of experts I have ever seen."))[7]; *Richey*, 498 F.3d at 364 (holding that a state-court determination that petitioner's counsel was not ineffective was unreasonable under § 2254(d) where counsel failed to retain an expert who could have "disputed the State's conclusion that any of the samples contained traces of gasoline or paint thinner" and "testified that the burn patterns, about which [the State's expert] made so much, were just as consistent with a naturally occurring fire").

Similarly, Mr. Gray's claim of prosecutorial misconduct is based on the deliberately misleading presentation of evidence and deliberately misleading arguments made by the State at trial, all of which are now evident from the record. The only theory of the crime the State

---

[7] Dr. Hurst is a Cambridge-educated chemist who invented some of the world's most powerful explosives, the Mylar balloon, and the modern formulation for Liquid Paper before devoting most of the past two decades to working on arson cases *pro bono*. (Dkt. 47, Ex. 19 Hurst Dep. at 8-14.)

14

presented was predicated on the idea that gasoline had been found. (*See* L-136, State's closing argument: "He goes to the Clark gas station with an empty plastic gallon of milk, this one. And he goes to a black lady, and he purchases gasoline from the black lady."); (J-219, testimony of Det. Crescenzo, "[I] detected a strong odor of gasoline [from the milk jug]"). The State knew that was false. Mr. Gray respectfully submits that this Court could grant him relief on these claims on the trial record alone.

## CONCLUSION

For the foregoing reasons, Adam Gray respectfully requests that this Court lift the stay of this case and schedule an expedited hearing on his claims, or order such other procedures as it deems appropriate.

Dated: August 20, 2013

Respectfully submitted,

By: */s/ R. Douglas Rees*
One of Petitioner's attorneys

Tara Thompson
THE EXONERATION PROJECT
The University of Chicago Law School
1111 E. 60th Street
Chicago, IL 60637
Phone: (773) 702-9611
Email: tthompson@law.uchicago.edu

R. Douglas Rees
Brij B. Patnaik
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Phone: (312) 840-8662
Fax: (312) 840-8762
Email: bpatnaik@jenner.com

Julia Kasper
KATTEN MUCHIN ROSENMAN, LLP
525 W. Monroe Street
Chicago, IL 60661-3693
Phone: (312) 902-5280
Email: julia.kasper@kattenlaw.com

**CERTIFICATE OF SERVICE**

I, Brij B. Patnaik, hereby certify that a copy of the foregoing Reply in Support of Petitioner's Motion To Lift Stay and Hold an Evidentiary Hearing was served upon the following on August 20, 2013 by the Court's CM/ECF system, in accordance with the Administrative Procedures for the Case Management/Electronic Case Filing System for the Northern District of Illinois.

        Leah M. Bendik
        Assistant Attorney General
        Criminal Appeals Division
        100 W. Randolph, 12th Floor
        (312) 814-5029
        LBendik@atg.state.il.us

Dated: August 20, 2013

        By: */s/ Brij B. Patnaik*
            One of Petitioner's attorneys

| | |
|---|---|
| Tara Thompson<br>THE EXONERATION PROJECT<br>The University of Chicago Law School<br>1111 E. 60th Street<br>Chicago, IL 60637<br>Phone: (773) 702-9611<br>Email: tthompson@law.uchicago.edu | R. Douglas Rees<br>Brij B. Patnaik<br>JENNER & BLOCK LLP<br>353 N. Clark Street<br>Chicago, IL 60654-3456<br>Phone: (312) 840-8662<br>Fax: (312) 840-8762<br>Email: bpatnaik@jenner.com |
| Julia Kasper<br>KATTEN MUCHIN ROSENMAN, LLP<br>525 W. Monroe Street<br>Chicago, IL 60661-3693<br>Phone: (312) 902-5280<br>Email: julia.kasper@kattenlaw.com | |